UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOEL RIVERA,

      Petitioner,

-vs-                                Case No.  6:09-cv-476-Orl-31GJK

SECRETARY, DEPARTMENT
  OF CORRECTIONS, et al.,

      Respondents.

_____/

**ORDER**

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 7).  Petitioner filed a reply (Doc. No. 9) and a supplemental reply (Doc. No. 11) to the response.

      Petitioner alleges three claims for relief in his habeas petition:  1) trial counsel was ineffective for failing to file a motion to suppress Petitioner's confession; 2) trial counsel was ineffective for failing to investigate and call witnesses and for misleading Petitioner into not testifying; and 3) trial counsel was ineffective for failing to present the  BB gun at

trial.

## I.     *Procedural History*

Petitioner was charged by an amended information with robbery with a deadly weapon.  A jury trial was held, and Petitioner was found guilty as charged.  The trial court adjudicated Petitioner guilty of the crime and sentenced him to life imprisonment. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) with the state trial court, which was denied.  The state appellate court affirmed the denial *per curiam*.

Petitioner then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied.  Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II.    *Legal Standards*

## A.     *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

---

[1]In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2]  *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.    *Analysis*

### A.    *Claim One*

Petitioner asserts that trial counsel was ineffective for failing to file a motion to suppress his confession.   According to Petitioner, he made numerous statements to Detective Benjamin Talton that were coerced through promises of leniency and assisting him in gaining admission into a drug program.  This claim was raised in Petitioner's Rule 3.850 motion and was denied by the state trial court because there was no basis supporting a motion to suppress.

Detective Talton testified at trial that he interviewed Petitioner at the jail, that  he read Petitioner his *Miranda*[3] rights, and that Petitioner signed a form affirming that he understood those rights.   (Appendix C, Transcript of Trial at 243-46.)   Petitioner also acknowledged in the form that he had not been threatened, coerced, or promised anything

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

in exchange for making a statement.  *Id*. at 245-46.  Thus, Petitioner's confession was obtained by Detective Talton after Petitioner knowingly waived his *Miranda* rights and acknowledged that he had not been promised anything.  Further, Detective Talton denied making any promises to Petitioner or agreeing to provide assistance for his drug problems. *Id*. at 273, 284.

Consequently, Petitioner has not shown that counsel acted deficiently with regard to this matter or that he sustained prejudice.  As such, it cannot be said that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

**B.**    *Claim Two*

Petitioner states that trial counsel was ineffective for failing to investigate and call any witnesses and for misleading Petitioner into not testifying.   He mentions Iris Pagan, and his mother, Norma Rivera, as potential witnesses, "who would have rebutted . . . Detective Talton's testimony that he did not promise the defendant leniency."  He states that Ms. Pagan would have testified that Detective Talton had promised to help him and that Ms. Rivera would have testified that Petitioner told her about the promises Detective Talton made.  He also mentions that he would have testified that he never pointed the BB gun at the victim and that the BB gun was inoperable.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because Petitioner did not show prejudice.

6

1.      *Failure to Call Witnesses*

Ms. Pagan was Petitioner's girlfriend, and she confessed to her participation in the robbery and also implicated Petitioner in the crime.  (Appendix L, Attachment to State's Response to Defendant's Motion for Postconviction Relief.)  Thus, even if she had testified to the alleged promise made by Detective Talton, she still could have been examined about her confession and how she implicated Petitioner in the crime, which would have been detrimental to Petitioner's case.  Further, she would have been subject to impeachment for bias in favor of him, thereby reducing her credibility.

Ms. Rivera was Petitioner's mother, and it appears that her proposed testimony about what Petitioner told her would have been inadmissible hearsay.  Moreover, like Ms. Pagan, she would have subject to impeachment for bias in favor of him, thereby reducing her credibility.

Moreover, the presentation of witness testimony is essentially strategy, and it is, therefore, within trial counsel's domain.  *See Gasanova v. United States*, 2007 WL 2815696, at *9 (W.D. Tex. September 6, 2007).  Mere speculation as to the testimony an uncalled witness would have given is too uncertain.  *Id.*  A petitioner cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.  *Id.*  In the case of an uncalled witness,  at the very least, the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial.  *Id.*  To show prejudice, the petitioner must show not only that the uncalled witness's testimony would have been favorable, but

also that the witness would have testified at trial.  *Id.*  In the present case, Petitioner has

provide mere speculation as to the proposed testimony of these witnesses.

As such, Petitioner fails to meet his burden of proving that the state court

unreasonably applied controlling Supreme Court precedent or unreasonably determined

the facts in denying relief on this issue.

2.    *Failure to Allow Petitioner to Testify*

An unloaded BB gun can qualify as a deadly weapon, and whether a BB gun--loaded

or unloaded--is a deadly weapon is a jury question.  *See Dale v. State*, 703 So. 2d 1045 (Fla.

1997).  Here, the victim testified that Petitioner pointed the gun at her and that it looked

very real.  (Appendix C, Transcript of Trial at 200, 217.)  Thus, Petitioner's testimony that

the gun was inoperable would not have necessarily exonerated him of committing the

crime of robbery with a deadly weapon.

Additionally, Petitioner's claim is refuted by the record.  At trial, Petitioner's counsel

stated that he had discussed with Petitioner whether to testify, and Petitioner specifically

informed the trial court that "I don't want to testify."  *Id.* at 288.  Petitioner did not raise

any objections to counsel's statements on the matter, and, aside from conclusory

allegations, he has failed to demonstrate counsel prevented him from testifying or told him

he could not testify.

Further, Petitioner had numerous previous felony convictions and would have been

subject to impeachment as a result.  Counsel's decision as to this matter was reasonable

under the circumstances.

Moreover, in light of the overwhelming evidence of Petitioner's guilt, it is difficult for the Court to conceive of anything Petitioner could have said that would have provided any reasonable possibility of a different outcome.  *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) ("Considering the overwhelming evidence of Sayre's guilt, we cannot conceive of anything Sayre could have said that would have provided any reasonable possibility of a different outcome.").

Consequently, Petitioner has not shown that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this issue.

## C.      *Claim Three*

Petitioner contends that trial counsel was ineffective for failing to present the BB gun at trial.  He states that, after seeing the BB gun, the jury would have determined that the BB gun was incapable of inflicting great bodily harm.  He also mentions that counsel should have objected when the prosecutor told the jury that the BB gun was a deadly weapon.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because Petitioner had not established prejudice.

### 1.      *Failure to Introduce BB Gun*

The victim testified at trial that Petitioner was holding a gun in his hand, that the gun looked "very much real," and that Petitioner handled it like it was a real gun. (Appendix C, Transcript of Trial at 200.)  The victim further testified that, since she

9

believed that the gun could be real, she "did exactly what [Petitioner] asked [her] to do and left it at that." *Id.* Obviously, the BB gun was used in an effort to make the victim believe that it was a real firearm and for her to react accordingly, and the plan was successful.

However, because the BB gun looked real, introducing it into evidence likely would have provided more support for the State's position that it had been threatened to be used in a way likely to produce death or great bodily harm. The fact that the gun may have been inoperable was of no consequence, since Petitioner's actions implied that the gun was loaded and operable. *See Mitchell v. State*, 698 So. 2d 555, 556 (Fla. 2d DCA 1997) (finding that "[w]ith both words and actions, [the defendant] implied that the gun was loaded and operable. Nothing visible to any victim in this case would lead any rational person to conclude that the BB gun was not a loaded and operable, deadly or dangerous weapon.").

Thus, Petitioner has not shown that counsel acted deficiently or that he sustained prejudice. As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this issue.

> 2. *Failure to Object to Prosecutor's Comments*

During closing argument, the prosecutor argued as follows: "You think it's a gun, that's a deadly weapon. You think it's a B.B. gun, that's a deadly weapon. The way it was--the way it was used, it was used--threatens with it, she obviously is scared and gives up the money. He treats it like a deadly weapon." (Appendix C, Transcript of Trial at 319.) Petitioner argues that the prosecutor's comments were a misstatement of the law and that

10

counsel should have raised an objection.

"Both the prosecutor and defense counsel are granted wide latitude in closing argument, *Williams v. State,* 912 So. 2d 66, 68 (Fla. 4th DCA 2005), but an improper argument by a prosecutor can make a trial so fundamentally unfair as to deny the defendant due process. *Villella v. State,* 833 So. 2d 192, 199 (Fla. 5th DCA 2002). Here, Petitioner has not shown that the prosecutor's comments were improper. The prosecutor correctly argued that it would up to the jury to decide whether the BB gun was a deadly weapon. Moreover, Petitioner has not established that the prosecutor's comments in any manner rendered his entire trial fundamentally unfair.

Thus, Petitioner has not shown that counsel acted deficiently or that he sustained prejudice. As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this issue.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Joel Rivera is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.     This Court should grant an application for certificate of appealability only if

the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[4]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 22nd day of September, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sa 9/22
Counsel of Record
Joel Rivera

---

[4]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts*,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

12